The next case on for argument is under the case In Re Ridgemour Meyer Properties, LLC, but it's Ridgemour Meyer Properties, LLC v. Goetz Fitzpatrick. Mr. O'drania. Joseph O'dragna for Ridgemour Meyer Properties. May it please the Court. Mr. O'dragna, you might want to bring the podium up slightly. I'm not very good with the company mechanics. I'm being particularly attentive to speaking into the mic today since we have Judge Winter on the phone, and I want to make sure that he hears everything you have to say or we all have to say. How am I doing? You're doing great. Thank you. And we'll start the clock over again for you. Joseph O'dragna for the appellant, Ridgemour Meyer Properties. May it please the Court. The doctrine of impari delicto has existed in the State of New York, untrampled for over 200 years, and in this particular instance, the doctrine is being challenged. And I am appearing here not just on behalf of my client asking this Court to vacate the judgment that has been entered against it, but also to explain to the Court how this particular decision attacks the doctrine of impari delicto. So if we could go to the 2009 malpractice action, is it true to characterize that action, the focus of it, as one that focused on the filing of the deeds and the cover-up that followed with respect to the underlying transaction? It did focus on that, but it also focused on other matters. The so-called malpractice classification that was provided by the appellee in this case is really not an apt description. There were four separate causes of action in that complaint. One was for malpractice. One was for violation of canons of ethics. One was for breach of fiduciary duty. And the other one was for breach of contract. The contract was the contract of retainer. I know, but the breach, the allegation of breach, was in connection, was it not, with the filing of the deeds and the cover-up? I don't know if it was limited to that. Only discovery in the action would have, if testimony of, if evidentiary testimony was taken in the New York proceeding, I could answer that question, but it wasn't. The judge basically said, in that case, Judge York said, rather than deal with the multifarious issues that have been raised in this matter, two doctrines will suffice to take care of not just the issues between the parties, but dispose of the entire case. And in coming to that conclusion, Judge York made reference to what the bankruptcy court had found in the first proceeding, which was that the debtor, its principal, Rotunde, and its attorney, mentioned in the first proceeding, Mr. Carbone, had acted with dishonesty and deceit. And based upon... In connection with the deeds and the cover-up. That is correct. It's correct. And that the court need not get into a factual analysis of it, because the doctrine of impari delicto, which had been argued against my client in the state of New York, in the state court action, Gets Fitzpatrick argued that because they were impari delicto with my client, my client couldn't recover. And the state court agreed, and dismissed the cause of action against my client, basically saying that in the state of New York, we do not open our doors to wrongdoers. We leave you where you are. We're not going to listen to argument over the proceeds of dishonesty. We leave you where you are. And that was the decision in the state court matter. And that decision was appealed to the appellate division, and subsequently the court of appeals of the state of New York was requested to review it, and it chose not to. In other words, this isn't just... It went through the state system to the apex of examination, and Judge York's opinion was deemed to be correct under the circumstances of this case. Did it go through on examination of impari delicto? Yes. Who was pushing against that? Ridgewell Myers, my client. Because my client believed it was entitled to recovery. But both the appellate division as well as the court of appeals said sorry. Well, the court of appeals said sorry, but the appellate division actually ruled on it, right? Yes. And said, impari delicto, the doors to the courtroom are closed. Okay? And so that brings us to where we are now, where the bankruptcy court said no. Doors are... The same bankruptcy court that... It said yes and no. It said it divided the period of time at issue. It didn't allow full recovery of the attorney's fees. But what it did do is it opened its doors to this new theory called disaggregation, which had never been part of impari delicto in the 200 years before. In the 200 years before, impari delicto was... It was a doctrine very clearly stated, if you were found to be a wrongdoer, the court was closed to you. It wasn't a limiting doctrine as the bankruptcy court has now said it was. It has always been a complete bar. In other words, if you are engaged with another person, if two more people or entities decide that they want to do something that is illegal and or dishonest, they do it at their peril. And if they get caught, the doors to the courthouse are closed to them because they know, they understand that if they're going to get caught, that the door is going to be closed. And if they want some type of reward, they're not going to get it from the court. The court's not going to preside over disputes between wrongdoers. And that's what the bankruptcy court decided it would do. I see I have a red light. Thank you. Was there any argument made to the bankruptcy court, and then by extension to the district court, that this issue has already been decided, it's res judicata? Oh, absolutely. Absolutely. That's what I thought. There's no question about it. And there were motions in limine made to prevent. This case never should have gone to an analysis of the facts. Under the doctrine of imperi delicto, it ended. Well, I'm more interested in under the analysis of res judicata. Okay. Yes. Okay. Thank you. You've reserved three minutes for rebuttal. Mr. Simon, good morning. Good morning, Your Honors. If it please the Court. Scott Simon, Getz Fitzpatrick. We are the appellee. The appellant, the debtor, doesn't really do a good job of explaining what happened here. This was an arbitration matter that went on for close to two years. And during that time, Getz Fitzpatrick, under a valid lawful retainer agreement, provided the debtor with not just legal services, but excellent legal services. Getz Fitzpatrick was successful in prosecuting this arbitration for the debtor. It won the case. The debtor was ecstatic. And as a result of that arbitration, the debtor was the party that was to receive a $5 million property. And it was only after the entire prosecution of that case, after arbitration hearings, after the award was to be entered, that a Getz Fitzpatrick attorney engaged in malpractice with the principles of the debtor to record a deed before there were security documents given for that recordation. The bankruptcy court, well, the debtor filed a State court action during which it alleged that Getz Fitzpatrick engaged in malpractice, breached the retainer agreement, et cetera, et cetera, due to the malpractice, the conduct that was done at the end, right, after the arbitration award was entered, after the deed was recorded. The debtor has been disingenuous throughout this case, okay? The district court and the bankruptcy court both found that the debtor's position was disingenuous to the point of frivolous. The debtor admitted during the bankruptcy case that the debtor was only seeking to bar Getz Fitzpatrick's recovery of fees on and after the date that those deeds were recorded. The record is clear that three, four, five different times during the case, including in written responses to discovery, the debtor agreed that Getz Fitzpatrick's good performance during the entire course of that arbitration is a basis for allowing the fees during that period. It was only after the recordation of the deeds, when there is no dispute that misconduct was conducted, that the fees were not recovered. So the bankruptcy court and the district court, relying on both the debtor's admissions and the in pari delicto doctrine, found that Getz Fitzpatrick was, in fact, entitled to fees. Now, this 1960 court of appeals, New York court of appeals case that the debtor relies on, it's called McConnell, that holding was specifically limited to instances where the illegality was the dominant part of the whole course of conduct. So the debtor's new claim that there was some distraction or new principle of law of disaggregation that the bankruptcy court and district court have found here is just not the case. This goes back to 1960, and cases where the in pari delicto doctrine has been followed by New York cases such as Hilgendorf, by the Southern District of New York in a case called Imagepoint, they both found that where there's a lawful agreement, like a legal retainer agreement, that legal retainer agreement is enforceable by its terms, even if a party engaged in misconduct during the course of that performance, as long as the party doesn't require that misconduct to collect on its fees. In other words, for the case of Getz Fitzpatrick, it's not a basis for letting The McConnell case is instructive in that matter, Your Honors. In that case, there was a record producer, and the record producer said to a third party, if you third party can get this distributed by a national distributor, I'll give you $10,000. And the third party took that $10,000 and used it to bribe a distributor. And so the production got made, and the third party went back to the producer and said, okay, I did what you wanted, pay me a separate fee that we agreed to, a percentage of your profits. And, of course, in that situation, in pari delicto did bar that third party from going to court, because the entire performance of the contract was illegal. The bribe was a distinct part, the direct part, the entire part of how they were to get paid. So here, Getz Fitzpatrick performed for years in a good way. The debtor won because of Getz Fitzpatrick. The debtor was happy because of Getz Fitzpatrick. And it was only at the end, when there was joint misconduct between the principal of the debtor and the firm, that there was a question of whether the fees should be awarded under in pari delicto. And that was the issue that was up before the appellate division and declined to be reviewed by the court of appeals? No, Your Honor. In fact, the issue in the State court proceeding was that the entire complaint filed by the debtor against Getz Fitzpatrick, breach of contract, malpractice, was entirely limited to that recording of the deed, as Your Honor said. And the cover-up. And the cover-up. But this was all after the arbitration had proceeded. And the court found that the cover-up in the recording of the deeds was joint conduct by the debtor and Getz Fitzpatrick. Therefore, they were in pari delicto. Getz Fitzpatrick never argued, as the debtor improperly seeks to argue now, that the entire retainer was void as a result of in pari delicto. It was only the debtor could not seek a malpractice breach of contract claim against Getz Fitzpatrick arising out of the joint recording of the deed, the joint cover-up afterwards. Thank you. Thank you. Actually, let me ask you, is this the law in your view, and I'm going to ask Mr. Adragna the same thing, is the law in your view clear enough in the State of New York that we should not think about asking the or certifying this to the New York Court of Appeals? That's a great question. The answer is certification is not necessary for a number of reasons. The first reason is that the debtor's question that they seek certification on is based on a false premise. The false premise is that Getz Fitzpatrick argued in State court that the retainer was unenforceable. Getz Fitzpatrick never did that, as I just stated. The second reason is that the debtor's question relates to its argument that Getz Fitzpatrick's successful summary judgment motion in State court stops it from seeking a recovery for its legal fees in the bankruptcy court as to that same retainer agreement. But that argument wasn't made in the bankruptcy court. So the district court found that that argument was waived. So there's copious law that says when an argument is premised, is based on a false premise, or when an argument was waived below, a party cannot seek certification. Even if the debtor can overcome those two hurdles, certification is still not proper, because what the debtor is seeking to have certified isn't really in pari delicto. They're really seeking to certify judicial estoppel. The idea that Getz Fitzpatrick argued in State court one thing, and now in the bankruptcy court it argued something else, but that's not what happened. What happened in State court is Getz Fitzpatrick argued that the recording of the deeds in the subsequent cover-up were joint conduct between it and the debtor. Therefore, from and after that misconduct, there is no basis for a malpractice claim because the parties acted jointly and pari delicto bars it. In bankruptcy court, there's no inconsistency between saying we're not talking about that joint conduct for the recording of the deeds and afterwards. All we're talking about in bankruptcy court is the proper conduct, the successful conduct in the arbitration proceeding pursuant to a lawful and valid retainer agreement for years of legal fees. And I should say that the district court was troubled by the idea of the debtor expanding this in pari delicto doctrine under McConnell, the court of appeals decision, to cover situations like this one, where professionals provide services for an extended period of time, but are foreclosed from recovering for those services based on a single instance of misconduct at the end of the relationship. Thank you, Mr. Simon. Mr. O'Dragnin. I think that my adversary just misstated something to you. He said it's the debtor that relies on the McConnell decision and it's not. It was brought up by the appellee in its brief, and it was brought up for the reason there's dicta in that decision that basically said that it's not every wrongdoing that results in pari delicto. And the thrust of his argument, read the briefs, you'll see it's not me that brought it up. The thrust of his argument is this was an innocuous thing that we did wrong. We admit we did it wrong, but it was really innocuous because we won the case. But the truth of the matter is they didn't win the case. Just told you that they won the case, but they didn't. Because there was a quid pro quo. And the quid pro quo was that the deeds would be filed simultaneously with the mortgage. They were not. By filing the deeds of record title without filing the mortgage, they misrepresented the situation of the properties to the world. Could have been sold without that mortgage. Could have been remortgaged without that mortgage. So land records are all in good shape now, though, right? When they settled the case, they rectified all of the things that they did wrong. And the reason they, the reason Getz Fitzpatrick recommended the filing of the bankruptcy was to freeze their wrongdoing in place so that it couldn't be undone because the, and please keep in mind that the misrepresentations here or the failure to speak when they had a duty to speak was aimed at the court. The arbitrator was the court in this case. This, our case is not a case where impari delicto relates to a business situation. The misrepresentations were made to the court. And so it was not innocuous. It was not innocuous. We had been arguing from the very beginning that in as much as the state court found that the parties were impari delicto and that the matter had been appealed to the highest court of the state and maintained that the issue was over. When the bankruptcy court decided it would hear facts, that's antithetical to the doctrine of impari delicto as time honored in the state of New York. That doctrine says once you're found to be impari delicto, you're done. You don't get your day in court. You don't elicit facts. Under the decision as put forth with the bankruptcy court, it actually incentivizes wrongdoing. In other words, we can do good things and then at the end when it's necessary, we can weigh risk and reward and we can do a bad thing. But if we do that bad thing, we're not going to be penalized because we can collect for all the good things. That's not the doctrine of impari delicto. Impari delicto says if you decide you're going to do something wrong, you make the decision at your peril. And if you get caught and you think you're entitled to something, sorry, our courts are closed to you. Thank you. Thank you both. We'll reserve decision in this matter.